JAMES CRAIG v. WABASH RAILROAD COMPANY, Appellant.

Railroads: KILLING STOCK: SPECIAL FINDING. In an action for
1  the killing of a horse on defendant's railway track, where the
   plaintiff relied on circumstances tending to show that it was
   struck on the track some distance from the crossing and defendant claimed it was struck at the crossing, a special finding
   that it was not killed upon the crossing is tantamount to an
   affirmative finding for plaintiff on that issue, since under the
   evidence the collision must have occurred at one of the two
   locations.

Evidence: CONCLUSION OF WITNESS. A witness may give his con-
2  clusion regarding a matter which cannot be reproduced to a
   jury as it appeared to the witness.

Evidence Regarding Locality of Accident.   Where it is important
3  to determine the distance from a crossing at which the animal
   killed was struck, a witness may state that he measured from

certain depressions in the track for the purpose of connecting the measurements with the locality of the accident, where it appears that the depressions were made by the animal.

Right of Way Fence: MAINTENANCE. The fact that plaintiff
4 maintains the right of way fence over which an animal escapes and is killed by a passing train will not relieve the railway company from liability therefor, in the absence of an affirmative showing by the company that plaintiff by agreement is to maintain the same, or that it is sufficient and in good repair when the accident occurs.

Negligence in Operation of Train. Where it appears that an animal
5 is killed on defendant's railway at a point where it is the duty of the company to maintain right of way fence, which it fails to do, negligence of defendant in the operation of its train is immaterial.

*Appeal from Appanoose District Court.*—HON. ROBERT
SLOAN, Judge.

THURSDAY, OCTOBER 22, 1903.

ACTION for the value of a horse alleged to have been killed by defendant at a point where it had the right to fence, but did not; also through the negligence of its employes. The highway crosses the defendant's right of way at an acute angle. The north cattle guard is sixty-eight feet from the center of the crossing. Trestlework over a ravine forms the south cattle guard, and is ninety-one feet from the same point. A wing fence extending east intersect the right of way fence, and that part from such intersection to the highway fence from the corner of the pasture belonged to plaintiff, and over it his horse escaped August 10, 1900, went on the railroad track, and was killed. In the morning of that day it was in the pasture. Later the wires of the fence were found bent and on them hairs of the same color as of the horse. Tracks were traced over the fence up to the embankment from fifty to sixty feet south of the traveled road on the track, and then north to a point thirty feet south of the north cattle

guard.  To that point the tracks were of a horse walking,
and from there they indicated that it was jumping, and
the last—nine to twelve feet from the crossing—that its
feet had scooped out the earth, as though struck by some-
thing.  A track was found just outside the rail, immedi-
ately west of this, and the body of the horse in the ditch
beyond.  There was evidence tending to show that defend-
ant failed to blow the whistle at the whistling post, but
did blow it three times just as the engine passed over the
trestlework, immediately before it struck the horse, at
about nine o'clock a. m., and that the bell did not ring;
also that a horse could have been seen on the crossing a
quarter of a mile before the engine reached it.  The evi-
dence of defendant tended to show that all proper signals
were given at the whistling post, and that the horse was
not seen until the engine was too near to be stopped be-
fore striking it; that it was then running toward the
track from a distance of twenty-five or thirty feet, and
was struck on the crossing.  Trial to a jury resulted in a
verdict for plaintiff, and a special finding that the horse
was not struck on the crossing.  From judgment rendered
thereon, defendant appeals.—*Affirmed.*

*Fee & Fee* for appellant.

*C. F. Howell* and *C. H. Elgin* for appellee.

LADD, J.—The highway, where it crosses the railroad,
is forty-five feet wide.  The plaintiff relied on circum-
stances tending to show that the horse was struck by the
engine while on the track fifty-six feet north
of the center of the crossing.  The defendant
engineer and fireman testified that the collision occurred
on the crossing.  The jury rejected their evidence as un-
reliable, by an answer to a special interrogatory that it
did not happen at that place.  This was tantamount to a
finding that the horse was struck fifty-six feet north of

1. KILLING
stock: spec-
ial finding.

the center of the crossing, for, under the evidence, the collision must have occurred at one of these two places. Appellant argues that the evidence supporting this conclusion is unreliable, and in any event not inconsistent with the contention that the animal was hit by the engine on the crossing. The probative force of circumstantial evidence requires no vindication at our hands, nor is it necessary to spend any time in demonstrating that the finding of horse tracks leading from a pasture to a point fifty-six feet from a crossing, and there terminating, and the finding of the body of the horse twelve feet beyond, in the ditch at the side of the track, is inconsistent with the testimony that he was killed by the engine at the crossing.

The testimony that the tracks were of a horse, and indicated his motion—whether walking, running, or jumping—was clearly admissible. It was of facts somewhat in the nature of conclusions. These could not well be so described as to convey to the mind of the jury the inference of precisely what the horse was doing, and therefore the witness, as a part of the description, was properly allowed to state whether they were similar to tracks when walking or when running or jumping. "It is competent for a witness to testify to his conclusion, when the matter to which the testimony relates cannot be reproduced or described to the jury precisely as it appeared to the witness at the time." *Yahn v. City of Ottumwa*, 60 Iowa, 429; *Bizer v. Bizer*, 110 Iowa, 248; *Stewart v. Anderson*, 111 Iowa, 329.

2. EVIDENCE: conclusion of witness.

II. It was important to ascertain the distance of the horse, when struck, from the north cattle guard and the center of the highway crossing. To enable him to measure such distance, a witness was allowed to testify that plaintiff pointed out certain depressions scooped out in the track, from which he measured. This was admissible as connecting the measurements with the locality of the collision, for

3. EVIDENCE regarding locality of accident.

plaintiff's testimony tended to show that the horse must have caused these when struck by the engine. *Ward v. Ry. Co.*, 97 Iowa, 54.

III. From a point where the east right of way fence intersects the wing fence running north from the trestle to the north west corner of the pasture, the fence belonged

**4. RIGHT of way fence.** to plaintiff, and was somewhat in the right of way; and as, according to plaintiff's theory, the horse passed directly over this fence in the right of way to the point where it was killed, the defendant insists it is not liable, for that fence was not shown to be defective, and, even if so, the loss was owing to plaintiff's negligence. The character of this fence does not appear, save that it was constructed of posts and wire. No evidence of its sufficiency to turn stock was introduced. If there were any agreement, express or implied, that the landowner should erect the right of way fence or keep it in repair, the record does not disclose it. The mere fact that he had maintained some kind of a fence there for fifteen years did not, alone, warrant such an inference. The company had the right to fence its track at the point where the horse escaped. It failed to do so. Upon proof of this, and the injury to the animal by one of its engines passing over the track, a *prima facie* case was made out for plaintiff. Code, section 2055; *Brentner v. C., M. & St. P. R. Co.*, 68 Iowa, 530; *Manwell v. B., C. R. & N. R. Co.*, 80 Iowa, 662; *Wall v. Des Moines, M. & N. R. Co.*, 89 Iowa, 193; *Norman v. C. & N. W. R. Co.*, 110 Iowa, 283. If defendant were relieved from the duty of erecting or maintaining a fence by the action of plaintiff, or had other excuse, the burden of proof was upon it both to plead and establish such defense. *Kingsbury v. C., M. & St. P. R. Co.*, 104 Iowa, 63. As said, the voluntary construction of some kind of a fence by the landowner along the right of way did not excuse the company from erecting that required by law. *Louisville, etc., R. Co. v.*

*White,* 94 Ind. 257; *Norfolk, etc., R. Co. v. McGavock's Admr's,* 90 Va. 507 (18 S. E. Rep. 909). To relieve the defendant from responsibility, it must not only appear that the fence, in its construction, was sufficient, but at the time complained of it was in a fair state of repair. *Jefferson, etc., R. Co. v. Sullivan,* 38 Ind. 262. If this were shown, the company would not be liable, even though the fence may have been erected by a mere volunteer. *Hovorka v. Minneapolis, Etc., R. Co.,* 31, Minn. 221 (17 N. W. Rep. 376); 2 Thompson, Negligence, section 2097. As no agreement with plaintiff to erect or maintain the right of way fence was proven, and a sufficient fence was not shown to have been erected by him, the escape of the horse into the right of way must be held to have been owing to defendant's failure to comply with the statute.

IV. Appellant also argues that the collision was not shown to have occurred beyond the east boundary line of the highway; that is, where the company had the right to 5. NEGLIGENCE fence. Waiving the question as to whether in operation of train. this was necessary, we think the evidence is otherwise. The grade at the crossing was about eight feet high. The approaches to the crossing were twelve feet wide, and the planks sixteen feet long. The horse, when hit, must have been fifty-six feet from the center of these planks, which, in the absence of evidence, will be presumed also to be in the center of the highway. It was the duty of the company to construct this crossing. Code, section 2054. *Farley v. C., R. I. & P. R. Co.,* 42 Iowa, 234. It had been maintained at the identical place for thirty-five years. In the absence of some controlling reason to the contrary, highways are to be improved so that travel shall pass along the middle line of the land appropriated therefor. *Quinton v. Burton,* 61 Iowa, 471. The company cannot well complain of the assumption that it constructed the crossing at the place exacted by law. The statute required the cattle guards and fence to be

placed along the line of highway.  *Andre v. C. & N. W. R. Co.*, 30 Iowa, 107.   These should then have been twenty-two and one-half feet from the center of the crossing.   That the horse was struck beyond a line twenty-two and one-half feet from the center of the crossing, if not on the crossing as contended by defendant, the record leaves no doubt.   In returning a verdict for plaintiff, and finding that the horse was not hit on the crossing, the jury necessarily so concluded.   The collision must have occurred, if the finding of the jury is to be accepted, where the defendant had tJe right to fence, and failed to do so.   This being true, it is immaterial whether the defendant was negligent in the respects alleged, and the errors assigned in relation thereto, if conceded to be such, were without prejudice.— AFFIRMED.